UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ANNUZIATA GERMANA, EXECUTRIX
OF THE ESTATE OF DOMINIC
ACQUARULO, and JOKER'S WILD
ENTERTAINMENT, LLC,

   Plaintiffs,

  v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

   Defendant.

No. 3:16-cv-01611 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

After the death of Dominic Acquarulo, Plaintiffs — Annunziata Germana, Mr. Acquarulo's widow and executrix of his estate, and Joker's Wild Entertainment, LLC, his former employer — filed an Amended Complaint to address his disability insurance and related benefits. They allege, on behalf of his estate, that Reliance Standard Life Insurance Company ("Reliance") breached the terms of its insurance policy. *See* Am. Compl.*,* ECF No. 22.

Defendant now moves to dismiss the Amended Complaint. *See* Def. Mot. to Dismiss, ECF No. 24.

For the reasons stated below, the motion to dismiss the Amended Complaint, ECF No. 24, is **GRANTED in part** and **DENIED in part**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Dominic Acquarulo, a Connecticut resident, worked for Joker's Wild Entertainment, LLC, a Connecticut limited liability corporation. Compl. ¶ 1, ECF No. 1-1. Annunziata

Germana, also a resident of Connecticut; became Executrix of the estate of her husband, Dominic Acquarulo, on August 9, 2018. Amend. Compl. ¶ 2, ECF No. 22. Reliance Standard Life Insurance ("Reliance") is an insurance company allegedly doing business in Connecticut. Amend. Compl. ¶ 2.

### A. Factual Background

Reliance issued an insurance policy to Joker's Wild Entertainment, LLC, which provided Joker's Wild's employees with benefits for loss of time due to disability from sickness or injury." Policy at 8.0, Def. Mot. to Dismiss, Ex. A, ECF No. 11-2).

The policy provided "Weekly Income Benefits," if an individual "is disabled due to Sickness or Injury" and "becomes disabled while insured by this Policy." *Id*. "[D]isabled" meant being "unable to do the material duties of his/her job," as well as "not doing any work for payment [and] under the regular care of a physician." *Id*. at 2.0.

According to the terms of the plan:

> LEGAL ACTIONS: No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is required to be given.

*Id.* at 6.0.

Reliance allegedly provided Mr. Acquarulo with disability insurance and related benefits and, in exchange, he paid the insurance company a premium. Amend. Compl. ¶ 2.

In August, 2014, Mr. Acquarulo submitted a claim for short term disability benefits under the Joker's Wild policy. *See* Letter from Asha Davis, STD Claims Department, to Dominic Acquarulo ("Denial Letter") (January 12, 2015), Def. Mot. to Dismiss, Ex. B, ECF No. 11-3. He

had been diagnosed with "glioblastoma multiforme IV," symptoms that first appeared in June 2014. *Id.*

Reliance denied that claim. *See* Denial Letter at 5. The denial letter stated that to be covered individuals had to be "actively at work," which means "the person [is] actually performing on a full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed." *Id.* at 3.

In rejecting the claim, Reliance also stated:

> During the course of our investigation, we have also received information that during part of the period in which you were not working, that you were, in fact, incarcerated. We have learned that you were incarcerated on January 15, 2013 and were released from prison on April 9, 2014. During a recent telephone call, we were informed that you were actually released from prison sometime in January 2014, due to a compassionate release.
>
> It is our contention that your Individual Insurance possibly terminated as early as January 2012, when you ceased full time work, but most certainly as late as January 15, 2013, the date of your incarceration. According to the contract, your Individual Insurance will be reinstated provided you return to Active Work within the period of time shown on the Schedule of Benefits.
>
> According to the Schedule of Benefits, the Waiting Period for future employees is 90 days of continuous employment. The Individual Effective date is the first of the month coinciding with or next following completion of the Waiting Period. The policy requires that should you return to work more than 6 months after your Individual Insurance terminates, you would have to satisfy the Eligibility Requirements of the policy again.
>
> Therefore, since the information that we have documents that you were released from prison on April 9, 2014, assuming you returned to work sometime in April, you would have satisfied the Service Waiting Period in July 2014. Therefore, your Effective Date of Individual Insurance would be August 1, 2014, which is prior to your claimed period of disability.

*Id*. at 4.

Reliance noted, however, that it appeared Mr. Acquarulo had worked until September 2014. Ultimately "[s]ince you have continued to work and since we have not received the previously requested documentation, we are unable to complete the processing of your claim and determine whether benefits are payable. Please be advised that your claim file is being closed at this time." *Id.* at 5.

The denial letter also stated that Mr. Acquarulo could request a review of the denial of coverage by submitting a request in writing. *Id.* The review request "must be submitted within 180 days of your receipt of this letter" and state the reasons for seeking review. The review provisions also noted that "[y]our failure to request a review within 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the [Employment Retirement Income Security Act ("ERISA")], and effect you [sic] ability to bring civil action under the Act." *Id.*

**B.      Procedural History**

On August 26, 2016, Dominic Acquarulo and Joker's Wild Entertainment, LLC, filed the initial Complaint in this case in the Superior Court for the Judicial District of New Haven. *See* Compl., ECF No. 1-1. The Complaint alleged breach of contract and sought money damages "and any other such relief as the interests of justice may require." *Id.*

Reliance then removed the case to this Court. *See* Notice of Removal, ECF No. 1. It sought removal under this Court's federal question jurisdiction, arguing that "the Policy and the claims in this lawsuit are subject to and governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq*." *Id.* ¶ 6. The cause of action therefore was removable as "an action arising under federal law." *Id.* ¶ 7.

Following removal, Reliance moved to dismiss the Complaint. *See* Def. Mot. to Dismiss, ECF No. 11.

Before the Court could act, however, Plaintiffs filed notice that Dominic Acquarulo had died on December 13, 2016, "after the commencement of this action." Notice of Death, ECF No. 13. Plaintiffs then moved to substitute Annuziata Germana, as Executrix of the Estate of Dominic Acquarulo, for Dominic Acquarulo. *See* Pl. Mot. to Substitute, ECF No. 21. The Court granted the request. *See* Order, ECF No. 23.

Annuziata Germana and Joker's Wild filed an Amended Complaint, renewing their breach of contract claims. *See* Amen. Compl., ECF No. 22. Plaintiffs allege that "[a]lthough all of the obligations were performed by the plaintiffs and the decedent with respect to the policy of insurance, the defendant has refused, and continues to refuse, to pay the covered losses." Amend. Compl. ¶ 5. They allege therefore that the "defendant's refusal to pay the claims as aforesaid is a breach of the terms of the policy of insurance between the parties." *Id.* They renew their claim for money damages. *Id.*

Defendant again move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Def. Mot. to Dismiss, ECF No. 24; Def. Mem. in Support, ECF No. 24-1 ("Def. Mem."). Reliance primarily argues that ERISA controls the action and that Mr. Acquarulo's claim was not properly exhausted. It also argues that Joker's Wild is not a proper party to the lawsuit. *Id.* As a result, the company argues that dismissal is warranted.

On August 13, 2018, the Court heard oral argument on the pending motion to dismiss and then permitted supplemental briefing from the parties. ECF No. 31. On August 15, 2018, Defendant filed its supplemental brief, ECF No. 32, and on August 23, 2018, Plaintiffs filed their supplemental brief. ECF No. 33.

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A court will dismiss any claim that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

All of the factual allegations in the complaint will be taken as true. *Iqbal*, 556 U.S. at 678. The factual allegations will also be viewed in the light most favorable to the plaintiff, and all inferences will be drawn in favor of the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

"Although courts considering motions to dismiss under Rule 12(b)(6) generally must limit [their] analysis to the four corners of the complaint, they may also consider documents that are incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008). This is especially true if the Amended Complaint "'relies heavily upon [their] terms and effect,' which renders the document[s] 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (rejecting allegations that were "belied by the letters attached" to the complaint); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (when reviewing a judgment on the pleadings, courts assume facts alleged are true "unless contradicted by more specific allegations or documentary evidence").

### III. DISCUSSION

Reliance raises three arguments. First, although the Amended Complaint does not explicitly cite the statute, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, governs the policy. Second, because ERISA only provides a cause of action to the beneficiary of the policy, Joker's Wild is not a proper plaintiff in this case. Finally, Mr. Acquarulo failed to exhaust his claim and it is too late to do so now.

Effectively conceding that ERISA controls, Plaintiffs do not address in their filings whether Joker's Wild is a proper party in this case, but do argue, on the issue of exhaustion, that Defendants either waived the argument or should be estopped from arguing it in defense of Mr. Acquarulo's claim. Plaintiffs also argue that the policy's language is ambiguous.

Because the short-term disability benefits provided by the insurance policy through Mr. Acquarulo's employment constitute an "employee welfare benefit plan" within the meaning of

29 U.S.C. § 1002(1), ERISA governs. As a result, only Mr. Acquarulo and his estate are proper parties and Joker's Wild must be dismissed from the case. This "employee welfare benefit plan," however, lacks clear procedures for appealing a denial of benefits.

Indeed, the plan itself — which provides for legal actions if filed within sixty days after the written proof of loss — suggests the propriety of Acquarulo's lawsuit. Reliance relies instead on the terms in its denial letter. Reliance does not present any authority, however, justifying why the denial letter should govern, as opposed to the language of the plan documents themselves. And the plan documents' ambiguity means that Reliance's motion to dismiss this lawsuit in its entirety therefore is denied.

### A. ERISA's Application

Defendant first argues that "While the Amended Complaint is silent on the subject, the claims in it are governed by ERISA." Def. Mem. at 3. Defendant argues that the plan constitutes an "employee welfare benefit plan" or "welfare plan" within the meaning of 29 U.S.C. § 1002(1).

Plaintiffs do not appear to dispute ERISA's applicability. First, Reliance removed to this Court based on the Court's federal question jurisdiction, citing ERISA as the basis for why removal was appropriate. Notice of Removal ¶¶ 6-7. Plaintiffs did not move to remand. Second, Plaintiffs' memorandum in opposition to the motion to dismiss merely argues that they should not be required to exhaust here based on ambiguity, waiver and estoppel; it does not dispute that ERISA applies in the first place. *See generally* Pl. Mem. in Opp., ECF No. 27; Second Mem. in Opp., ECF No. 33. ERISA defines a welfare plan as any plan which is:

> established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or

> unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C.A. § 1002(1). "Congress intended the definition of 'employee welfare benefit plan' to be broad and independent of the specific form of the plan.*" Okun v. Montefiore Med. Ctr.*, 793 F.3d 277, 279 (2d Cir. 2015) (internal quotations, citations and alterations omitted).

The plan provides benefits for short-term disability, and is paid for by the employer. *Contra* 29 C.F.R. 2510.3-1(j) (describing requirements for plans to be exempt from ERISA requirements). As Defendants note: "[t]he intended benefits are the short term disability benefits claimed by Plaintiff, the class of beneficiaries are those who qualify for disability benefits, the source of financing is the insurance policy and the procedures for receiving benefits are clearly stated within the policy." Def. Mem. at 3.

ERISA's employee welfare provisions therefore apply here, given the terms of the plan and Plaintiffs' apparent concession. *Cf. Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 194 (2d Cir. 2000) ("Its meaning and function remained clear; it was a benefit triggered by disability. And, under the plain language of the statute, 'to the extent' that Nestle's Pension Plan provides benefits that are triggered by disability, that portion of the plan is a welfare plan under § 1002(1).").

### B.     Proper Parties

Defendant also argue that Joker's Wild is not a proper party because ERISA's cause of action applies to participants and not employers. Def. Mem. at 3 ("Neither § 1132(a)(1)(B) of the ERISA remedial statue or any other section permits Joker's Wild Entertainment, LLC to maintain a claim against Reliance."). Plaintiffs do not address this aspect of Defendant's

9

arguments in their filings, but, at oral argument, suggested that Joker's Wild was a proper party as a "participating unit." The Court disagrees.

While ERISA provides that "a civil action may be brought" by a "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B), the Second Circuit has long recognized that employers lack standing under § 1132 to enforce a claim. *See, e.g.*, *Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Employees, a Div. of RWDSU, AFL-CIO*, 717 F.2d 726, 730 (2d Cir. 1983) ("Accordingly, we hold that Tuvia, as an employer, did not have standing to bring an action under section 1132 of ERISA."); *see also Danecker v. Bd. of Trustees of Serv. Employees 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 614 (S.D.N.Y. 2012) (same).

Plaintiff Joker's Wild therefore is dismissed from the case.

### C. Exhaustion

The Second Circuit also has long recognized that there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Construction*, 788 F.2d 76, 79 (2d Cir. 1986)). The exhaustion requirement serves three primary purposes: to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Kennedy*, 989 F.2d at 594. The requirement is an affirmative defense; the failure to exhaust is not jurisdictional. *See Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006) ("Indeed, the requirement is

purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement.").

Given the exhaustion requirement, a plaintiff must "pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002).

Plaintiffs argue, as a threshold issue, that the plan is ambiguous and therefore they should not be required to exhaust their claim. Pl. Mem. in Opp. at 5-6. First, they argue that the policy document does not state that a claimant must appeal a denial of benefits before challenging that denial in court. Pl. Mem. in Opp. at 6. Second, they argue that the denial letter states that failure to request review of a denial "may" constitute a failure to exhaust and that this provision should be held to be permissive, rather than mandatory. *Id.*

Reliance argues that there is no requirement that appeal procedures must be in the "policy or other plan document" and that the denial letter clearly informed Plaintiffs of the appeal procedure. Def. Mem. at 3.

Reliance points to no caselaw that holds that a denial letter — and the exhaustion provisions included therein — could override the language of the plan or policy agreed upon between the participants and the insurer.

As the Second Circuit has recognized, "[i]mplicit in the exhaustion requirement is the condition that a plaintiff must have an administrative remedy to exhaust.*" Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013). As a result, the Second Circuit recognized an exception to the exhaustion requirement where "plan participants . . . reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a

11

result." *Id.* at 181. Instead, "ERISA seeks to avoid saddling plaintiffs in such circumstances with the burdens and procedural delays imposed by inartfully drafted plan terms." *Id.*

The plan terms here, as expressed in the policy, do not include an express exhaustion provision. Reliance has attached to its motion a policy that does not explain an appeals procedure at all, although it does discuss the time limit for filing a legal action. In its "Claim Provisions" section, the policy requires written notice within thirty-one days after an alleged loss, to be "sent to us at our Administrative Office or to our authorized agent." Policy at 6.0. Reliance then is supposed to send claim forms, but, if it does not, the claimant must provide a written statement within ninety days after the loss began. *Id.* Reliance will not consider claims made more than one year after the alleged loss.

> Under a section labeled "LEGAL ACTIONS" the policy states:
>
>> No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this policy. No action may be brought after three (3) years . . . from the time written proof of loss is required to be given.

*Id*. No other provisions relate to the appeal of a denial.

After considering the language of Reliance's policy, a plaintiff might "reasonably interpret[] the plan terms not to require exhaustion" and therefore think she "may proceed in federal court." *Kirkendall*, 707 F.3d at 180. The ambiguity exception "is based on the idea that benefits plan descriptions should clearly inform participants of their rights and obligations with respect to exhaustion requirements." *Santiago*, 2015 WL 1897350, at *1. The plan at issue here does not do so.

Indeed, the policy fails to "specify the claimant's rights in the event of a denial, and the steps necessary for administrative review of a denied claim." *Wegmann v. Young Adult Inst., Inc.*, No. 15 CIV. 3815 (KPF), 2016 WL 8711557, at *4 (S.D.N.Y. Aug. 5, 2016). This

12

distinguishes this case from other cases within the Second Circuit where courts have found plans to unambiguously require exhaustion. In those cases, the policy documents at issue included descriptions of the procedures necessary to exhaust the claim, which were then addressed again in a subsequent denial notification. *See, e.g.*, *Wegmann*, 2016 WL 8711557, at *4–*5 (noting policy's appeal provisions); *Tuttle v. Prudential Ins. Co. of Am.*, No. 3:17-CV-00100-VAB, 2018 WL 1245731, at *2 (D. Conn. Mar. 9, 2018) (recognizing that "an employee must follow the claims procedure specified in the policy" and describing multi-stage appeals process provided in the policy documents); *Santiago v. Barnes Grp. Inc.*, No. 3:13-CV-01853-WWE, 2015 WL 1897350, at *2 (D. Conn. Apr. 27, 2015) ("The plan description informs participants of their right to bring a civil action if a claim is denied upon review; yet after plaintiff's claim was denied, she did not request a review of the denial from the Benefits Committee.").

Reliance argues that, even though the policy itself does not have any exhaustion provisions, the denial letter's express language suffices. For this proposition, Reliance cites ERISA's regulations, which stipulate what must be included in a denial letter. Def. Rep. Br. at 3 (citing 29 C.F.R. § 2560.503-1(g)(1)). Reliance argues that these regulations "state that notice of appeal rights should be communicated to the claimant *in the adverse benefit determination*." *Id.* (emphasis in original). The plain text of the provision Reliance cites, however, merely requires that notification of the denial of benefits include a "description of the plan's review procedures and the time limits applicable to such procedures." *Id.* at § 2560.503-1(g)(1)(iv). That is: the regulations governing notice presume that the plan documents already establish some procedure for appealing a denial.

Reliance also omits the section of the same regulations that address what must be included in the policy document itself. *See, e.g.*, 29 C.F.R. § 2560.503-1(b) ("Every employee

13

benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations"); *id.* at § 2560.503-1(h) (noting minimum requirements for appeal procedures in ERISA plan).

In their supplemental filing, provided after oral argument, Reliance points to the Insurance Certificate as having "an explanation of appeal rights . . . ." [Def. Suppl. Br. at 2]. This Certificate, however, applies for "Claims Filed With Reliance Standard Life Insurance Company on or After April 1, 2018," *i.e.*, after this lawsuit was already pending. [*See* Certificate at 25, ECF No. 32-1.]

Under ERISA's "deemed exhaustion" provision, this certificate cannot establish an appeals process for Mr. Acquarulo's claim. Indeed, "[u]nder the Department of Labor's claims-procedure regulation, . . . a claimant 'shall be deemed to have exhausted' her administrative remedies if a plan fails to establish or follow claims procedures in compliance with ERISA." *McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 155 (S.D.N.Y. 2017) (citing 29 C.F.R. § 2560.503–1(l)(1)). "In *Eastman Kodak Co. v. STWB, Inc*., for example, the Second Circuit addressed "[w]hether a benefits claimant may be required to exhaust administrative remedies that were adopted only after the claimant has brought an action to recover benefits." 452 F.3d 215, 220 (2d Cir. 2006). The defendant, Bayer, "admittedly had no ERISA-compliant claims procedure in place when Coyne first sought benefits. Still, Bayer notes, an ERISA-compliant claims procedure was adopted later, and it was given retroactive effect to before the time when Coyne filed his suit." *Id.* at 221. According to the *Eastman Kodak* court, the "'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court—an end not compatible with allowing a 'do-over' to plans that failed to get it right the first time." *Id.* at 222.

14

Ultimately, however, Defendant's supplemental filing makes it clear that the resolution of this issue should await the summary judgment stage of this litigation. *Cf. Spector v. Bd. of Trustees of Cmty.-Tech. Colleges*, 463 F. Supp. 2d 234, 246 (D. Conn. 2006) (deferring judgment of exhaustion until summary judgment in Title VII case because "prudence would seem to counsel against deciding the matter before the parties have developed a more complete evidentiary record."). Indeed, all the cases cited by Reliance in its supplemental filing are cases decided at the summary judgment stage, rather than at the motion to dismiss stage. *See* Def. Suppl. Br. at 4 (citing *Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309 (11th Cir. 2000); *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487 (D.C. Cir. 1998); and *Holmes v. Colorado Coal. For the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1214 (10th Cir. 2014)).

Because the Court would benefit from a fuller factual record to determine what notice Plaintiffs were given of an appeals provision, if any, and if they could have "reasonably interpret[ed] the plan terms not to require exhaustion," the Court will deny the motion to dismiss as to exhaustion. *See Kirkendall*, 707 F.3d at 181.

## IV.  CONCLUSION

Defendant's motion to dismiss, ECF No. 24, is **GRANTED in part** and **DENIED in part.** Plaintiff Joker's Wild is dismissed from the lawsuit; Ms. Germana's claims, as executrix of Mr. Acquarulo's estate, will proceed.

The Clerk of the Court is instructed to remove Joker's Wild as a party to this lawsuit.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of August, 2018.

　　　　　　　　　　　　　　　　　　  /s/ Victor A. Bolden  
　　　　　　　　　　　　　　　　　　Victor A. Bolden  
　　　　　　　　　　　　　　　　　　United States District Judge